*1166 On Application for Rehearing.
In the brief of counsel on application for rehearing it is said: “ Counsel for the Citizens Bank do not question the conclusion of the court that the sale of the stock of the bank attached to the McCausland plantation is void, but they respectfully suggest that the sale of the plantation under the proceedings taken by the bank in 1879 is also void. The court rests the validity of the sale on the consent of the bank. * * *
“We respectfully suggest that the Board of Directors of the Citizens-Bank never expressly or impliedly consented to a sale of the plantation separate from the stock, and therefore both the sale of the stock and the sale of the plantation are void.
“ A decree that Irvine is not liable for contributions on the stock because the sale of the stock was a nullity would meet the case presented by the pleadings. Whether Irvine acquired a title to the plantation free from the stock mortgage is a question not raised by the pleadings. *
“ The court has, however, passed upon that question in its opinion. We respectfully suggest that the exigencies of the case are met by deciding that Irvine is not personally liable for stock subscriptions, and when the bank shall hereafter proceed to enforce the stock mortgage against the plantation the effect of the judicial sale made in 1879 can be more satisfactorily determined, and hence the court should reserve so important a question for final determination when that question becomes the vital point in the case and is thoroughly discussed by counsel.”
The prayer of plaintiff’s petition in the case is as follows:
“ Petitioner prays that John F. Irvine may be cited to answer hereto; that after due proceedings judgment may be rendered in its favor against said defendant for the amount of said contributions, to-wit: Four thousand f ur hundred dollars, with interest as aforesaid, with a recognition of petitioner's mortgage on the property herein described to secure said stock and the contributions aforesaid, and that said tracts of land may be sold to satisfy as far as they will the judgment herein by preference. Petitioner reserving all its rights against defendant for the balance and sums which will hereafter become due on said shares of stock.”
It will be seen that the plaintiff claimed not only a personal judgment against Irvine as being personally liable for the contributions *1167 on the stock, but a judgment recognizing, contradictorily with him as a stockholder and as a purchaser of the land under and through its proceedings against him in 1879, a stock mortgage on that property.
The court below and this court had to pass upon and dispose of the whole of the prayer, not only as to Irvine’s personal liability, but also as to this claimed stock mortgage on the land. In disposing of each of the two claims reasons had to be assigned. When the court rejected plaintiff’s prayer for a recognition of the stock mortgage on the land owned by the defendant, it did not, as counsel say, pass upon a question not raised by the pleadings. In dealing with that question we had to consider the claim in the light in which and under the circumstances in which it was presented to the court. Under what circumstances was this mortgage claimed ? Was it under and through proceedings against the McOausland heirs or against Irvine as strictly a third possessor of. the land holding no privity with the asserted mortgage ? By no means. The claim was advanced directly against Irvine himself as a stockholder and as having as such personally assumed the reversion of the stock mortgage. The whole theory of plaintiff’s case is that Irvine is the owner of the land not under the two succession sales, but under the sale made in the executory pro - ceedings of the plaintiff in 1879.
We reasoned as to the existence of a stock mortgage from that standpoin presented by the plaintiff itself, and from it held it to be impossible for plaintiff to have sold the land in the manner and on the terms it did and to still retain a mortgage on the land. Plaintiff in its pleadings and its prayer maintained that it could do so. It did not ask the nullity of the sale.
So far from asking the nullity of the sale of the plantation by it to Irvine, its whole demand and prayer was based upon the existence and the legality of that sale. We could not have decreed the nullity under any prayer of the plaintiff, nor could we do so under defendant's pleadings and prayer. Defendant was already the owner of the property, though under a different title derived through the succession sales mentioned. There was no necessity for him to ask for a decree setting aside the sale by the bank to him. It would not have been to his interest to do so, and should the plaintiff bring the action against him which the brief hints at, he will, no doubt, vigorously oppose the action. The decree of nullity of the sale - of the plantation which counsel suggest as that which should have been rendered *1168 would have been not .a decree under the pleading, but entirely out-' side of them and directly against those of the plaintiff itself.
We did not intend to express an opinion and we expressed no opinion as to what the rights of parties would have been had an action of a different character from that actually brought been instituted, nor what would be those rights in’ case of a future action of a different character. Those matters are for future adjustment. We intended to deal and dealt only with the issues presented in this particular case, under its pleadings and prayer. Those we had to dispose of, as we have said, in their entirety. What we decide in this case are those issues — none other. Nothing that we have said could or should be construed to go beyond this.
Rehearing refused.